UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID ZOKAITES,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>CITY OF SIOUX FALLS,<br><br>　　　　　　Defendant. | 4:19-CV-04183-KES<br><br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S OUTSTANDING MOTIONS |

Plaintiff, David Zokaites, filed a complaint against the City of Sioux Falls alleging civil rights abuses in violation of the First, Fourth, Fifth, and Fourteenth amendments to the Constitution. Docket 1. Zokaites subsequently filed a motion to amend his remedy sought (Docket 20), motion to release a witness from criminal liability (Docket 21), motion to compel discovery (Docket 22), motion for additional discovery (Docket 23), and motion to repeal SDCL § 3-21-2 (Docket 24). The City of Sioux Falls moved for summary judgment. Docket 31. Zokaites then filed a motion to repudiate testimony (Docket 38), motion to rescind protective order (Docket 39), motion to repeal SDCL § 1-27-1.5(5) (Docket 40), motion to dismiss the City of Sioux Falls' summary judgment motion (Docket 41), motion to allow judge testimony (Docket 42), and motion to amend or correct his complaint (Docket 43). For the following reasons, the court grants the City of Sioux Falls' motion for summary judgment (Docket 31) and denies each of Zokaites's outstanding motions (Dockets 20, 21, 22, 23, 24, 38, 39, 40, 41, 42, 43).

**FACTUAL BACKGROUND**

The facts, viewed in the light most favorable to David Zokaites, the non-moving party, are as follows:[1]

On April 10, 2019, at around 9:00 a.m., Sioux Falls animal control officer Caroline Frith responded to a complaint of a deceased dog. Docket 32 ¶ 1. When Frith arrived at the scene, she observed a deceased dog whose face was crushed and not in the proper shape. *Id.* ¶ 2. The dog had blood on its collar and blood coming from its ears. *Id.* After photographing the scene and taking the dog's remains to a veterinary clinic, Frith returned to the scene to see if there were any cameras in the area where she found the dog. *Id.* ¶¶ 3-4.

When she returned, Frith saw a grey and blue older-model Chevy truck with the license plate "MY TRUK" parked about 100 yards from where she discovered the deceased dog. *Id.* ¶ 4. No one was in the truck. *Id.* After

---

[1] The Local Rules for the District of South Dakota require that a party moving for summary judgment file a "statement of the material facts as to which the moving party contends there is no genuine issue to be tried." D.S.D. Civ. LR 56.1(A). The opposing party "must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record[]" and "identify any material facts on which there exists a genuine material issue to be tried." D.S.D. Civ. LR 56.1(B). A failure to submit a response to the moving party's statement of material fact is "deemed to be [an admission]" of those facts. D.S.D. Civ. LR 56.1(D). Zokaites did not file his own statement of disputed material facts. The court construes paragraphs 3-8 of his motion to dismiss the motion for summary judgment (Docket 41) as a response to the City of Sioux Falls' statement of material facts. Pro se litigants like Zokaites are not excused from compliance with procedural and local rules. *Ziegler v. Norton*, Civ. No. 04-4098, 2006 WL 571866, at *1 (D.S.D. Mar. 6, 2006). Thus, the court considers any facts not disputed in Zokaites's motion to dismiss the motion for summary judgment as admitted.

2

searching the area for cameras but finding none, Frith drove back past the truck and saw a man—later identified as Zokaites—standing near the tailgate holding a shovel. *Id.* ¶ 5. Frith asked Zokaites what he was doing and he responded, "I'm making the world a better place." *Id.* ¶ 6. He stated that he was shoveling the bike path to clear it for people. *Id.* Frith asked Zokaites if he knew anything about the deceased dog, and he responded that he did not. *Id.* ¶ 7. According to the City of Sioux Falls, Frith called the police department to check on Zokaites because he was in "close proximity" to the place the dog was found and because he had a shovel. *Id.* ¶ 8. Zokaites disputes that Frith had "reasonable suspicion" to call the officers to check on him. Docket 41 ¶ 3.

Sioux Falls Police Department officer Brian Erickson was near the location of the deceased dog and Zokaites, so he responded to the scene. Docket 32 ¶ 9. When Erickson arrived on the scene, he briefly spoke with Frith and then drove to near where Zokaites was shoveling silt off the bike path. *Id.* ¶ 10. Erickson knew of Zokaites because of Zokaites's previous complaints about police officers driving motorcycles on the bike path. *Id.* ¶ 11.

According to the City of Sioux Falls, Erickson approached Zokaites and asked him why he moved traffic barricades that were at the intersection of Riverside Road and Phillips Avenue. *Id.* ¶ 14. Zokaites disputes that Erickson asked him about the barricades. Docket 41 ¶ 3. According to Zokaites, Erickson approached him and did not allow him to retrieve his phone from his truck to record the conversation. *Id.* An officer told him, "you're not going anywhere. And you're certainly not going to your truck." *Id.* Erickson was angry

3

and "belligerent," according to Zokaites, and Zokaites did not feel comfortable "discussing anything" with him. *Id.* Erickson issued Zokaites a citation for disobedience to a traffic control device because Erickson believed Zokaites moved the traffic barricades. *Id.* ¶ 3, 15. Zokaites left. *Id.*

The City of Sioux Falls asserts that Zokaites was "very uncooperative and distrustful" during the interaction between Erickson and Zokaites. *Id.* ¶ 17. According to Zokaites, he was cooperative and did everything Erickson commanded him to do. Docket 41 ¶ 3. The City of Sioux Falls also asserts that Erickson told Zokaites he was free to go, and in fact, asked him to leave the scene. Docket 32 ¶ 17. Zokaites states that because four police officers were present at the scene, he was being detained by the officers and did not feel free to leave. Docket 41 ¶ 3. Zokaites also states that Erickson was not amicable during the encounter, while the City of Sioux Falls asserts that Erickson's generally tries to "amicably resolve issues with citizens[.]" *Id.*; Docket 32 n.8.

Sioux Falls assistant city attorney Keith Allenstein ultimately dismissed the citation that Erickson issued to Zokaites for allegedly moving traffic barricades. Docket 32 ¶ 20. According to the City of Sioux Falls, the citation was dismissed before Allenstein spoke with Zokaites. *See* Docket 33 ¶¶ 4-5. Zokaites asserts that the citation was dismissed before the two spoke. Docket 41 ¶ 3.

Zokaites considers himself a public advocate. Docket 32 ¶ 13. He speaks at city counsel meetings, runs for public office, and files lawsuits to fulfill this role. *Id.* He regularly presents at city council meetings about topics ranging

4

from Earth Day to drug prohibition. *See* Docket 43 at 2-8. Zokaites ran for mayor of the City of Sioux Falls in 2018 and plans to run again in 2022. Docket 32 ¶ 13; Docket 34-1 at 25. Zokaites's campaign platform includes encouraging police reform to cut down on what he considers "rude[,] aggressive police." Docket 32 ¶ 13.

## I. The City of Sioux Falls' Motion for Summary Judgment

### A. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact.").

Once the moving party meets its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing

the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Courts must construe all pleadings "so as to do justice[.]" Fed. R. Civ. P. 8(e). Pro se filings are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] pro se complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Id.* (internal quotation omitted). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to litigants proceeding pro se. *Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

**B.     Whether Zokaites's Suit Against the City of Sioux Falls Survives Summary Judgment**

Section 1983 of the Civil Rights Act provides that "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. In a suit against a local government body, a plaintiff must show a constitutional rights violation was caused by an official policy or widespread custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). "[N]either municipalities nor government officials may be held liable for unconstitutional conduct under a

6

theory of respondeat superior." *Rogers v. King*, 885 F.3d 1118, 1122-23 (8th Cir. 2018) (citing *Monell*, 436 U.S. at 691). Thus, a governmental entity is liable under § 1983 "only when the entity itself is a 'moving force' behind the violation. That is, the entity's official 'policy or custom' must have 'caused' the constitutional violation . . . ." *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). "[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

Here, Zokaites sues only a municipality, the City of Sioux Falls. Docket 1. He does not sue Erickson or other officers in their individual or official capacities. *Id.* Thus, to survive a motion for summary judgment, Zokaites must "demonstrate on the record the existence of specific facts which create a genuine issue" of whether the City of Sioux Falls' "policy or custom" inflicted a constitutional injury. *Mosley*, 415 F.3d at 910 (internal quotation omitted); *Monell*, 436 U.S. at 694.

The court interprets Zokaites's motions as arguing two theories of how the City of Sioux Falls caused alleged civil rights deprivations. *See* Dockets 1, 41, 43. The first is that an illegal and unconstitutional detention occurred when Erickson issued Zokaites a citation while Zokaites cleaned the bike path. *See* Docket 1 at 1; Docket 1-1 at 1-9. Zokaites alleges that Erickson issued him a citation in retaliation for his presentations at city council meetings and that Erickson and the four other officers illegally detained him because he speaks out against the

7

police. Docket 1-1 at 1-9. He states that the officers intimidated him and played "power games" during the incident. Docket 1-1 at 8. According to Zokaites, the incident also evinces a conspiracy among police officers to violate his civil rights, because officers "seem to support each other absolutely and without question." Docket 1-1 at 8. He argues that he was detained illegally because four officers surrounded him and one stated that he was "not going anywhere!" Docket 41 ¶ 16. Zokaites also disputes that he moved the traffic barricade that Erickson accused him of moving and maintains that the barricade had been moved prior to Zokaites arriving at the location where he shoveled the bike path. *Id.* ¶¶ 14-15. Zokaites alleges that Erickson holds a personal grudge against him and does not want him to be mayor. Docket 43 ¶ 1. He claims Erickson's actions are retaliatory instead of in response to an actual violation committed by Zokaites. *Id.*

Zokaites's claim that Erickson violated his civil rights when he gave Zokaites a ticket as he cleaned the bike path cannot survive summary judgment in this suit against the City of Sioux Falls. Zokaites does not allege any facts, or support any facts with evidence on the record, suggesting that a "policy or custom" of the City of Sioux Falls led to the issuance of citation he received. *Mosley*, 415 F.3d at 910 (internal quotation omitted). Rather, his allegations rest on Erickson's personal grudge against him. Docket 43 ¶ 1. Assuming the truth of Zokaites's allegations against Erickson and the other police officers present during the incident, Zokaites points to nothing on the

8

record to show that the City of Sioux Falls itself as the "moving force behind" any alleged violation. *Clay*, 815 F.2d at 1170 (internal quotation omitted). Thus, Zokaites's claims about the citation incident cannot survive the City of Sioux Falls' motion for summary judgment.

The second theory Zokaites offers is that a "Pattern of Civil Rights Problems" in the City of Sioux Falls has caused him injury at various times over the past several years. *See* Docket 1-1 at 11; Docket 43 ¶¶ 1-2. He argues that a shocking number of Sioux Falls residents complain about police misconduct. Docket 1-1 at 11. He also states that his personal experience in the City of Sioux Falls shows a "general pattern of overzealous police who have no respect for civil rights." *Id.* He notes several incidents during which the police allegedly violated different citizens' rights via unlawful arrest. *Id.* at 12. Zokaites claims he has been unjustly detained six times: "Twice while running at night for exercise, twice while maintaining a public sidewalk, once while driving legally, and lastly for shoveling silt off the bike trail." *Id.* at 11.

These allegations do not survive summary judgment in a suit against the City of Sioux Falls. Zokaites does not show that the alleged "pattern of civil rights violations" are caused by any policy or custom from the City of Sioux Falls. He relies on conclusory statements about a "general pattern" of policing in the city, but does not point to any action, policy, or custom on the city's part to encourage or condone such policing. Zokaites "rests on mere allegations" of civil rights abuses by the City of Sioux Falls but does not "demonstrate on the record the existence of specific facts which create a genuine issue for trial[]" as

to whether the City of Sioux Falls' customs and policies caused his alleged deprivations. *Mosley*, 415 F.3d at 910 (internal quotation omitted). Thus, Zokaites has not overcome summary judgment.

Zokaites disputes several facts that the City of Sioux Falls put forth in its statement of undisputed facts (Docket 32) in his motion to dismiss the motion for summary judgment. Docket 41. He states that Erickson was rude, not amicable. *Id.* ¶ 3. Zokaites argues he was cooperative during the encounter. *Id.* He claims that Allenstein dismissed the citation before speaking with Zokaites, not after. *Id.* He also challenges whether Erickson had "reasonable suspicion" that Zokaites was involved with the dead dog. *Id.* While these facts are in dispute, they are not material to the question here. These facts, if assumed in Zokaites's favor, do not tend to show that the City of Sioux Falls' policy or custom was the driving force behind the alleged violation of Zokaites's civil rights. Rather, they support Zokaites's claim that Erickson has a personal grudge against him. Thus, while disputes of fact do exist, they are not material and do not prevent summary judgment in the City of Sioux Falls' favor.

Zokaites does not point to evidence on the record that the City of Sioux Falls' "policy or custom" led to a deprivation of his civil rights. Thus, the court grants the City of Sioux Falls' motion for summary judgment. The court does not reach the question of whether Zokaites' rights were violated during the citation incident or any other incident he describes in his pleadings.

**II.     Zokaites's Motions**

Zokaites moves to repeal SDCL § 3-21-2 (Docket 24) and SDCL § 1-27-1.5(5) (Docket 40). SDCL § 3-21-2 requires that individuals give notice of the "time, place, and cause of the injury" to a public entity within 180 days of the injury in order for the individual to file an action for "personal injury, property damage, error, or omission or death" caused by the public entity. SDCL § 1-27-1.5(5) places limitations on inspection and copying of law enforcement records. SDCL § 1-27-1.5(5). Whether or not these laws are in effect has no bearing on whether Zokaites was able to show evidence that a "policy or practice" of the City of Sioux Falls led to an alleged deprivation of his civil rights. Thus, the court denies each of these motions as moot.

Zokaites's motion to allow judge testimony (Docket 42) pertains to witnesses he would call at trial. Because the court grants summary judgment in favor of the City of Sioux Falls, this case will not proceed to trial. The court denies this motion as moot.

Zokaites's motion to release a witness from criminal liability (Docket 21), motion to compel discovery (Docket 22), and motion for additional discovery (Docket 23) each relate to either Erickson citing Zokaites or Zokaites's interactions with the Sioux Falls Police Department in past years. Zokaites has not put forth evidence that any of the alleged civil rights deprivations that occurred are the result of the City of Sioux Falls' "policy or custom." Thus, these motions are denied as moot.

Zokaites's motion to repudiate Erickson's testimony (Docket 38) seeks to discredit or strike Erickson's testimony as unreliable. As the court discussed above, even if Erickson is biased against Zokaites and that bias resulted in a constitutional deprivation, Zokaites did not show that such bias is the result of the City of Sioux Falls' "policy or custom." Thus, the motion is denied as moot.

The court grants the City of Sioux Falls' motion for summary judgment; thus, Zokaites's motion to amend the remedy he seeks (Docket 20) is denied as moot. His motion to dismiss the motion for summary judgment (Docket 41) is denied because the court grants the motion for summary judgment.

Zokaites seeks to amend his complaint. Docket 43. "A partly may amend its pleading once as a matter of course within 21 days after serving it." Fed. R. Civ. P. 15(a)(1). Zokaites filed his original complaint on November 5, 2019 (Docket 1), and his motion to amend on March 30, 2020 (Docket 43), more than 21 days after the complaint was filed. Thus, Zokaites needs this court's leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."). Under this court's Civil Local Rule 15.1:

> [A]ny party moving to amend a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so they may be easily identified. If the court grants the motion, the moving party must file a clean original of the amended pleading within 7 days.

D.S.D. Civ. LR 15.1. Zokaites did not attach a copy of his proposed amended complaint. Pro se litigants like Zokaites are not excused from compliance with procedural and local rules. *Ziegler*, 2006 WL 571866, at *1. The court denies

12

Zokaites's motion to amend (Docket 43) as it is not in compliance with the Local Rules.

## CONCLUSION

Zokaites's suit against the City of Sioux Falls may survive summary judgment only if he shows the city's policy or custom caused the civil rights violations he alleges. Zokaites did not point to evidence on the record to support a claim that the City of Sioux Falls' policy or custom caused the alleged deprivations. Thus, the court grants the City of Sioux Falls' summary judgment motion (Docket 31). Zokaites's motion to amend his complaint (Docket 43) is denied for failure to comply with the local rules. Zokaites's remaining motions (Dockets 20, 21, 22, 23, 24, 38, 39, 40, 41, 42) are denied as moot. Thus, it is

ORDERED that defendant's motion for summary judgment (Docket 31) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motions (Dockets 20, 21, 22, 23, 24, 38, 39, 40, 41, 42) are denied.

Dated August 18, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE